UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 2:10 CR 109 |
| | ) | |
| MARTIN ANAYA | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT ANAYA'S
MOTION FOR COMPASSIONATE RELEASE**

The United States of America, by Gary T. Bell, Acting United States Attorney for the Northern District of Indiana, submits this brief in response to defendant Martin Anaya's motion for compassionate release. (DE #1515).

In 2013, the Honorable Judge Lozano sentenced the defendant to 360 months' imprisonment following his conviction at trial of a RICO conspiracy and a narcotics conspiracy count. (DE #928). Even considering the COVID-19 outbreak, the defendant's health conditions, including obesity, when considered with the totality of the Section 3553 factors, do not entitle the defendant for relief. For the reasons explained below, the Court should deny the defendant's request for compassionate release.

### I. BACKGROUND

    **A. Charges and Conviction**

1

Anaya is a Latin King from Chicago. He pled guilty in Cook County at aggravated battery in 1990, and was sentenced to 18 months probation. He violated that term of probation, and his probation was eventually terminated unsuccessfully. That crime involved the defendant and others beating an individual with fists and a baseball bat because the victim wanted to leave the Latin Kings. He pled guilty in 1992 in Cook County to unlawful use of a weapon by a felon, and was sentenced to two years probation. That case involved the possession of a firearm. He was found guilty in Cook County in 1994 of aggravated battery with a firearm, and sentenced to 15 years custody. He was paroled two months later, and readmitted and paroled a number of times. That case involved him shooting someone. He pled guilty to a relatively minor reckless conduct case in 2008. He pled guilty to a domestic battery count in 2010. He also has a conviction for driving under the influence. PSR ¶¶ 39-51. The government considers his criminal conduct prior to the instant case extremely serious. He earned his criminal history category of VI.

In November, 2011 a grand jury returned a third superseding indictment in this case. The defendant was charged in a large, multiple defendant RICO conspiracy, a large narcotics conspiracy and murder in aid of racketeering and use of a firearm during the commission of that murder. In September 2012, he went to trial and was found guilty by a jury of the racketeering count and the narcotics conspiracy. He was found not guilty of the two murder counts. (PSR

¶1).

B. Sentencing

The presentence report calculated the defendant's base offense level to be offense level 43. This was based in large part on the Chicago murder of alleged Latin Count Christina Campos, of which he was found not guilty by a jury. (PSR ¶17). The presentence report also held the defendant accountable for the equivalent of 31,000 kilograms of marijuana. The defendant's offense combined adjusted offense level was 45, and his total offense level 43. (PSR ¶¶ 32, 35). With a criminal history category of VI, he scored life in prison. (PSR ¶109). At sentencing, the honorable Judge Lozano held that, although the government did not prove its case to a jury beyond a reasonable doubt, it did prove its case to the court, by a preponderance of the evidence. (DE #928). The court sentenced the defendant to a term of imprisonment of 360 months, a below guideline sentence. The court relied on 18 U.S.C. 3553 factors including, but not limited to, the defendant's age.

C. Post-Sentencing Litigation

The defendant filed a Motion to Reduce Sentence in March 2015. (DE #1193). It was denied by the court in June 2015. (DE #1209). He filed a 2255 motion in June 2016. (DE #1307). That motion was denied in August 2017. (DE # 1391). He filed a subsequent motion to vacate in March 2018. (DE #1414). It was denied the next month. (DE #1421). He filed the instant motion

in January 2021. (DE # 1515). He argues that he fits the criteria for compassionate release because he is obese. Id. According to the motion, he is 5"3 and 180 pounds. He lists is body mass index as 39. Id. A cursory google search indicates that this qualifies as obese, but not morbidly obese.

The defendant is presently 50 years old. (PSR, at 3). He has been in federal custody for approximately eleven years and he is currently serving his sentence at FCI Pekin in Pekin, Illinois, with a projected release date of May 14, 2036. *See* https://www.bop.gov/inmateloc/.

## II. ARGUMENT

### A. Applicable Law

Following revisions of the 2018 First Step Act, Title 18 U.S.C. § 3582(c)(1)(A)(i) provides that a Court may reduce a prisoner's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" "extraordinary and compelling reasons warrant such a reduction," "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[1]

---

[1] Congress explicitly gave authority to the Sentencing Commission to further describe what conduct would authorize a court to order a compassionate release. Specifically, 28 U.S.C. § 994(t) states that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples." The statute also states that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In the view of the United States, the Sentencing Commission has a policy statement applicable to such requests. The Seventh Circuit recently issued a contrary decision in *United States v. Gunn*, __F.3d __, 2020 WL 6813995 (7th Cir. Nov. 20, 2020), discussed further below. Nevertheless the government preserves its position that the current Section 1B1.13 policy statement prohibits this Court from reducing a defendant's sentence unless the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and that the 18 U.S.C. § 3553(a) factors must be considered. It also remains the government's position that in application note 1, the Sentencing Commission identifies the only "extraordinary and compelling" reasons that may justify compassionate release as:

    (A)    **Medical Condition of the Defendant.**—

        (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii)    The defendant is—
            (I)    suffering from a serious physical or medical condition,
            (II)    suffering from a serious functional or cognitive impairment, or
            (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility

and from which he or she is not expected to recover.

(B) **Age of the Defendant** — The Defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the ageing process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment; whichever is less.

(C) **Family Circumstances.** —

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.

(D) **Other Reasons.** — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1.

Thus, it remains the government's position that in order to qualify for compassionate release, a defendant must be able to demonstrate one of the listed reasons in (A)–(C) above or demonstrate some other condition that *in the discretion of the Director of BOP* qualifies for compassionate release. *See United States v. Shields*, No. 12-cr-00410-BLF-1, 2019 WL 2645028, at *2 (N.D. Cal. June 27, 2019). In turn, BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. Courts have frequently upheld BOP's discretionary authority in its management duties over federal prisoners.

*See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over [the place of imprisonment and treatment programs]."); *Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011) ("Congress delegated to the BOP the duty to manage and regulate all federal penal and correctional institutions.").

Regardless of whether these guidelines apply, Congress has explicitly required that release be granted only for reasons that are both "extraordinary and compelling." *See United States v. Greenhut*, No. 2:18-CR-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)). As district courts addressing these claims have noted: "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy) (quoting *United States v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019)). Compassionate release is "rare" and "extraordinary" and courts

routinely deny such claims. *United States v. Mangarella*, No. 3:06-cr-151-FDW-DK-3, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release . . . is an extraordinary and rare event." (citation omitted)); *cf. United States v. Johns*, No. CR 91-32-TUC-CKJ, 2019 WL 2646663, at *2–3 (D. Ariz. June 27, 2019) (granting reduction for 81-year-old defendant with multiple serious medical conditions, including "severe heart disease" and a stroke, from which he is not likely to recover, and, after serving 23 years, had a substantially diminished ability to provide self-care within the BOP).

The Seventh Circuit's decision in *Gunn*, while rejecting the government's view that Section 1B1.13 binds this Court, explicitly reaffirms that release can only be granted for reasons that are "extraordinary and compelling." *Gunn*, __F.3d __, 2020 WL 6813995, at 2. At the same time, the Seventh Circuit in *Gunn* found that the substantive aspects of Guidelines Section 1B1.13 and its Application Notes provide a "working definition" of "extraordinary and compelling reasons" that can guide discretion without being conclusive. *Id*. The Court warned that "a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*.

Thus, in applying *Gunn*, the Court in exercising its discretion should consider the Section 1B1.13 factors set forth above, including analysis of the

18 U.S.C. Section 3553(a) factors. As explained below, those factors on balance do not support reducing Steele's sentence.

### B. Defendant's obesity does not present "extraordinary or compelling reasons" sufficient to warrant release

The defendant is unable to show "extraordinary and compelling reasons" exist sufficient to support his immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

First, the defendant claims his obesity puts him at great risk for COVID, so that he should be released. The government notes that his weight falls below that which is considered morbid obesity, by his own admission. In addition, the medical records, attached as Government Exhibit 1 (under seal) indicate that he has already had, and recovered from, COVID-19. (Exhibit 1, pp. 14, 16, 88). In addition, his medical records indicate that he is being medicated for routine health conditions related to his obesity. This health status does not come close to meeting the "extraordinary and compelling" requirement of the statute or the medical condition discussion in U.S.S.G. §1B1.13, Application Note 1(A). *See, e.g., Cannon v. United States*, No. 11-048-CG-M, 2019 WL 5580233, at *3 (S.D. Ala. Oct. 29, 2019) (the 71-year-old defendant suffers from significant back and stomach issues, as well as high blood pressure, diabetes, skin irritation, loss of hearing, and various other complications, but relief is denied: "First, there is no indication that Cannon

is terminally ill. Second, despite the many medical afflictions Cannon identifies, he does not state, much less provide evidence, that his conditions/impairments prevent him from providing self-care within his correctional facility."; *United States v. Mitchell*, No. 5:10-CR-50067, 2020 WL 544703 (W.D. Ark. Feb. 3, 2020) (the defendant suffers from ordinary geriatric issues, including hypertension, gastroesophageal reflux disease, lower back pain, and benign prostatic hyperplasia, which do not prevent him from holding a job or providing self-care); *United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396 (E.D. Cal. Dec. 23, 2019) (the records "evince that Carpenter's medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Bunnell*, No. CR14-00119-001-PHX-DGC, 2019 WL 6114599 (D. Ariz. Nov. 18, 2019) (the defendant has "serious medical issues" – he "suffers from arthritis, sciatica, bulging lumbar discs 2-5, scoliosis, and degenerative disease causing central stenosis in his spine," and is confined to a wheelchair – but none of these are terminal illnesses or substantially diminish his ability to provide self-care within the environment of a correctional facility); *United States v. Greenhut*, No. 2:18-CR-00048-CAS, 2019 WL 6218952 (C.D. Cal. Nov. 21, 2019) (skin cancer and lesions for which the defendant is receiving effective treatment; the deterioration of his businesses during incarceration; and his desire to be

present in the life of his 13-year-old child are not extraordinary circumstances).

Even when combined with the COVID-19 pandemic, the defendant's obesity does not constitute "extraordinary and compelling" reasons sufficient to justify immediate release. According to the Centers for Disease Control and Prevention (CDC), people with "underlying medical conditions, particularly if not well controlled, including . . . [p]eople who have serious heart conditions" are at higher risk for severe illness from COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-athigher-risk.html, but the evidence in this case is that the defendant's obesity-related health issues are controlled by medication.

Recently, the Third Circuit explained that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Indeed, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13." *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).

Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where detention would otherwise be warranted. *See, e.g.*, *United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008) (collecting pre-trial detention cases). Despite the severity of the COVID-19 pandemic, the defendant's case is not one of those rare cases. The defendant has not demonstrated that he is at high risk to become severely ill from COVID-19, that his risk of contracting COVID-19 while in custody is significantly higher than if he were to be released, or that the facility is unequipped to provide appropriate medical treatment if he were to become sick. The defendant has therefore not shown that release is necessary for the compelling reason of protecting his life. The defendant has presented nothing in his amended motion approaching an "extraordinary and compelling" reason for release. In fact, as stated above, the defendant has already had COVID-19 and recovered from it.

Furthermore, when balanced against the 18 U.S.C. Section 3553(a) factors, the defendant's condition also does not justify release. Those factors include the offense's circumstances; the defendant's history; need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter criminal conduct; and protection of the public from further crimes of the defendant. A careful balancing of these factors warrants denial of early release for the defendant. The defendant was

involved in a massive gang conspiracy that menaced the citizens of Chicago and Indiana. Judge Lozano found that he shot and killed Christina Campos in April, 2009. He and his codefendants were held responsible for distributing more than 150 kilograms of cocaine. The court specifically attributed to this defendant the equivalent of 1,000 kilograms of marijuana. With a sentence of 30 years and roughly 11 years served, the Court should reduce this murderer's sentence by roughly two thirds. His medical condition, even when considered in light of COVID-19, does not constitute an "extraordinary and compelling" circumstance sufficient to warrant release when considered in light of the Section 3553(a) factors of the defendant's criminal history, the need for the sentence to reflect the seriousness of the offense, promotion of respect for the law, providing just punishment, deterring criminal conduct, and protecting the public from further crimes of the defendant.

### C. Defendant's facility has taken extraordinary steps to avoid spread of COVID-19.

Given the publicly reported community spread of COVID-19 in the world, it is not unlikely that the defendant will be exposed to COVID-19 through community transmission over the coming months regardless of his custodial status. *See* https://www.who.int/emergencies/diseases/novel-coronavirus-2019/situation-reports. Indeed, it is conceivable that the

defendant's risk of exposure is lower in custody, because the BOP strictly controls outsiders' access to its facilities, has taken great measures to avoid the spread of COVID-19, and has a plan and the ability to respond to sickness.

Even before COVID-19, BOP had protocols in place to combat the spread of infectious diseases, which are known to be risks wherever large groups of people gather. In particular, BOP has existing significant quarantine and isolation protocols for infectious disease outbreaks. But BOP has also implemented and planned for special measures to combat COVID-19.

BOP, like every other jail and prison, has protocols in place to combat the spread of viruses like COVID-19. Indeed, BOP has been planning for potential coronavirus transmissions since January, and has implemented modified operations, including modified measures for social visits, inmate internal movement, screening of inmates for COVID-19 prior to movement, screening of staff, and screening of all newly arriving BOP inmates for COVID-19 exposure risk factors and symptoms, with asymptomatic inmates with exposure risk factors being quarantined and symptomatic inmates with exposure risk factors being isolated and tested for COVID-19. *See* https://www.bop.gov/coronavirus/. Taken together, these measures should sharply mitigate the risks of COVID-19 transmission.

Moreover, there is no evidence that the defendant's custodial situation puts him particularly at risk of contracting COVID-19. Information about BOP's COVID-19 policies and practices are online at https://www.bop.gov/coronavirus/. That website also reports the number of COVID-19 cases in BOP. On that website, BOP is reporting 1,745 confirmed staff cases and 2,164 confirmed inmate cases currently housed in BOP custody—for a total of 3,909 people out of the approximately 159,362 people housed in or working at BOP facilities in the United States. In addition, 44,168 inmates and 4,456 staff have recovered, and 216 inmate deaths and 3 staff member deaths have been attributed to COVID-19. Of the inmate deaths, 4 occurred while on home confinement. At Pekin FCI, where the defendant is housed, 4 inmates and 9 staff members have confirmed cases of COVID-19.

In his motion, the defendant does not address the measures that BOP is taking to prevent any spread, including suspension of social visitation, internal inmate movements, legal visits, official staff travel, training, access by volunteers and many contractors; extensive screening of staff and inmates (including screening of all new inmates); quarantine; and modified operations to maximize social distancing as much as practicable. *See* Federal Bureau of Prisons, BOP Implementing Modified Operations, *available at* https://www.bop.gov/coronavirus/.

Given that no persons will be admitted to BOP facilities without being screened for symptoms and risk of infection, the risk that the defendant himself will be infected simply as a result of his incarceration is not necessarily higher than his risk of infection upon release. There is ample evidence of widespread COVID-19 transmission and clustering outside of BOP. Many much smaller institutions or entities in the United States (including nursing homes and senior centers, places of worship, TSA, cruise ships, Congress, and the NBA) have seen much greater numbers of confirmed COVID-19 cases, often in clusters, than BOP has to this point, and at times with tragic results. The defendant has not provided any evidence that he will be less likely to contract COVID-19 if released. For example, the defendant has not indicated whether he would return to a stable housing situation, whether he would have adequate access to food or healthcare. The ability to test, control, and isolate in BOP custody may, in the end, may limit transmission. But on this record, there is no evidence that BOP custody in general or custody at FCI Pekin in particular puts the defendant in some meaningfully greater risk of contracting COVID-19 as compared to the general population in the United States.

We are in the midst of a national crisis requiring extraordinary measures. But § 3582 covers compassionate release, not widespread

prophylactic release to deal with pandemic viral transmission around the world.

### D. Defendant's facility is equipped to provide appropriate medical care.

The defendant does not claim to be infected with COVID-19, or that he was denied necessary medical treatment or care for exposure to COVID-19 or for any other medical condition. Nor can the defendant establish that should he contract COVID-19 while in custody, the facility would be unable to administer constitutionally acceptable treatment. *Cf. United States v. Kidder*, 869 F.2d 1328, 1330-31 (9th Cir. 1989) (to prevail on 8th Amendment claim of avoiding prison for medical condition, defendant "must show that *no* constitutionally acceptable treatment can be provided while he is imprisoned" and collecting cases). In fact, as Exhibit 1 indicates, he has already contracted COVID-19 and recovered.

### E.

## III. CONCLUSION

Anaya has not presented evidence of a serious medical condition or any other extraordinary or compelling reason sufficient to warrant a reduced sentence. Despite the severity of the COVID-19 pandemic, the defendant's case is not one warranting release under 18 U.S.C. § 3582(c)(1)(A). He has not demonstrated that he is at high risk to become severely ill from COVID-

19, that his risk of contracting COVID-19 while in custody is significantly higher than if he were to be released, or that the facility is unequipped to provide appropriate medical treatment if he were to become sick. In fact, he has already become sick and recovered. The defendant has therefore not shown that "extraordinary and compelling" reasons exist sufficient to warrant a sentence modification under 18 U.S.C. § 3582(c)(1)(A).

GARY T. BELL
ACTING UNITED STATES ATTORNEY

By: /s/ David J. Nozick
David J. Nozick
Assistant U.S. Attorney
U.S. Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
Phone: (219) 937-5500
Fax: (219) 852-2770
Email: david.nozick@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 04, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court by using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following:

Martin Anaya

11317-027
PEKIN FCI
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
PO BOX 5000
PEKIN, IL 61555

/s/ Misha Bennett
Misha Bennett
Legal Assistant
